FILED
IN OPEN COURT

APR 11

CLERK, U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA

IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | No. 1:19cr101 |
| | ) | |
| v. | ) | Count 1: 18 U.S.C. § 1349 |
| | ) | (Conspiracy to Commit Wire Fraud) |
| ANTHONY ERIC MITCHELL, | ) | |
| Defendant. | ) | Counts 2 – 4: 18 U.S.C. § 1343 and 2 |
| | ) | (Wire Fraud) |
| | ) | |
| | ) | Forfeiture Notice |

**Indictment**

April 2019 Term – at Alexandria, Virginia

THE GRAND JURY CHARGES THAT:

**GENERAL ALLEGATIONS**

At all times relevant to this Indictment, unless otherwise stated:

***Relevant Persons, Entities, and Accounts***

1. AURA EXCHANGE LLC ("AURA") was a corporation that was previously organized under the laws of the State of Florida and the State of Delaware. The company was administratively dissolved by the State of Florida on or about September 25, 2015, and ceased to be in good standing in the State of Delaware on or about June 1, 2016. AURA also conducted business as Aura Exchange LTD, which was established in the Republic of the Marshall Islands. Aura Exchange LTD's corporate standing in the Republic of the Marshall Islands was dissolved on or about December 1, 2016.

2. From at least in or around 2014 through in or around November 2018, defendant

1

ANTHONY ERIC MITCHELL ("MITCHELL") and ARMANDO ALMIRALL ("ALMIRALL") served as Executive Managing Principals of AURA. Since at least in or around 2016, no individuals other than ALMIRALL and MITCHELL worked for AURA.

3.  ALMIRALL maintained a website for AURA at www.auraexchange.com. On that website, AURA held itself out as, among other things, an international privately owned company staffed by "high level professionals with deep experience in leading businesses" such as "physical commodities, transportation, market intelligence, refining, distribution, marketing, fashion, real estate, music, entertainment, trading and private equity finance." The website further represented that "Aura Exchange has an extensive amount of consultants drafted from the best consulting firms, fashion house [sic], recording labels, energy companies, hedge funds, trade desks, and private equity institutions."

4.  At various times during AURA's existence, ALMIRALL was the signatory on at least 13 bank accounts for AURA, including at JP Morgan Chase, accounts ending 0217 and 8725, Huntington Bank, account ending 0949, and TD Bank, account ending in 8708.

5.  At various times during AURA's existence, MITCHELL was the signatory on at least two bank accounts for AURA, including JP Morgan Chase, accounts ending 8725 and 5519.

6.  R.F. was a 67-year-old resident of Fairfax Station, Virginia. From in or around 1984 through at least in or around April 2019, R.F. worked as an employee of the Department of Housing and Urban Development ("HUD") in Washington, D.C.

## COUNT 1
### (Conspiracy to Commit Wire Fraud)

THE GRAND JURY FURTHER CHARGES THAT:

7. The allegations contained in paragraphs 1 through 6 of this Indictment are realleged as if fully set forth herein.

8. From at least in or about July 2017 through at least in or about January 2018, in the Eastern District of Virginia and elsewhere,

**ANTHONY ERIC MITCHELL,**

ALMIRALL, and others known and unknown to the grand jury, did knowingly conspire and agree with each other to commit the following offense, namely wire fraud – that is, having knowingly devised and intending to devise a scheme and artifice to defraud, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, to transmit and cause to be transmitted by means of wire communication in interstate commerce writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice, in violation of Title 18, United States Code, Section 1343.

*The Purpose of the Conspiracy*

9. The purpose of the conspiracy was for MITCHELL and his co-conspirators to defraud individuals and/or businesses through AURA, by appearing to offer legitimate business services for clients and by causing these individuals and/or businesses to provide payments to AURA for the purposes of obtaining business funding when, in fact, the defendant and his co-conspirators did not obtain funding for their clients and instead retained portions of the money they received for their own personal use and benefit.

### *The Manner and Means of the Conspiracy*

The manner and means by which the MITCHELL and his co-conspirators carried out the conspiracy, included, but were not limited to, the following:

10. AURA's website was established in or around January 2014. AURA's website contained materially false statements. For instance, AURA's website falsely stated: "Aura Exchange works with hundreds of international, national, regional, local lenders and financiers." It also misrepresented MITCHELL's qualifications by falsely claiming that MITCHELL "is an expert in developing multi billion dollar entities . . . ."

11. MITCHELL and ALMIRALL misrepresented to clients and potential clients that AURA had offices in Switzerland to provide legitimacy to AURA when, as MITCHELL knew, AURA never had offices in Switzerland.

12. MITCHELL and ALMIRALL also misrepresented to clients and potential clients that AURA maintained offices on Park Avenue in New York when, as MITCHELL was aware, AURA only leased virtual office space in New York for approximately six months, from in or around October 2014 to in or around April 2015. Further, by his own account, MITCHELL had never even visited this office location.

13. MITCHELL and ALMIRALL misrepresented to clients and potential clients that AURA had current legal standing in the Republic of the Marshall Islands. In reality, AURA's legal standing in the Republic of the Marshall Islands was terminated on or about December 1, 2016.

14. MITCHELL and ALMIRALL knowingly misappropriated funds entrusted to them by clients—funds that were intended to be used as deposits to assist with obtaining funding—to pay for MITCHELL and ALMIRALL's personal expenses without the knowledge

or consent of their clients.

**Fraudulent Conduct Related to Client R.F.**

15. R.F. sought to invest $1.2 million for the purposes of acquiring an investment property in North Carolina for a philanthropic venture.

16. Based on misrepresentations by MITCHELL and ALMIRALL, R.F. was led to believe that AURA was based in New York City, had an office in Zurich, Switzerland, and was registered in the Republic of the Marshall Islands. Moreover, R.F. believed that AURA was a legitimate business and a potential funding source for his venture in North Carolina.

17. Prior to agreeing to his deal with AURA, on or about July 2, 2017, R.F. sent an email to AURA through its website seeking to confirm that MITCHELL was in fact a representative of AURA. R.F. further wrote in his query: "I am getting ready to transfer to AURA this coming Thursday my life's savings and do not want to be disappointed with the transaction (hoodwinked)."

18. On or about July 5, 2017, R.F. received a reply email from "Pam Miller, Sr. Analyst, Aura Exchange LTD" from the email address pm@auraexchange.com. The email from "Pam Miller" confirmed that MITCHELL was one of two "Sr Executive Principals" at AURA and indicated that AURA was aware of R.F.'s real estate deal in North Carolina. However, no one named "Pam Miller" worked for AURA. That same day, the bogus email from "Pam Miller" to R.F. was forwarded to MITCHELL's email account.

19. On or about July 7, 2017, R.F signed a funding agreement with AURA for the purposes of financing his real estate acquisition in North Carolina. MITCHELL was present at the First Community Virginia Bank in Springfield, Virginia, within the Eastern District of Virginia, when R.F. signed the agreement. R.F., ALMIRALL, and MITCHELL, signed the

funding agreement. R.F. entered into this agreement based at least in part on the fraudulent misrepresentations AURA made.

20. In the funding agreement, ALMIRALL and MITCHELL falsely represented to R.F. that they would provide or arrange for $3.5 million in funding for R.F. in exchange for an equity deposit of $1.2 million.

21. In the funding agreement, to induce R.F. into providing AURA with money, ALMIRALL and MITCHELL misrepresented the true nature of how R.F.'s funds would be used. ALMIRALL and MITCHELL falsely represented that R.F.'s funds would be used solely for the purposes of completing the funding agreement. R.F. did not authorize his funds to be used for any purpose other than obtaining funding.

22. To further induce R.F. to part with his money, ALMIRALL and MITCHELL included an "equity deposit guarantee" in AURA's funding agreement that falsely assured R.F. that his original $1.2 million investment would be returned should the deal fail to close. ALMIRALL and MITCHELL also falsely promised a short turnaround on the deal, with a target date of no later than 60 days from the funding of R.F.'s equity deposit.

23. On or about July 7, 2017, ALMIRALL opened a business checking account in AURA's name with JP Morgan Chase Bank, account number ending in 8725. When the checking account was created, ALMIRALL was listed as the sole signatory on the account. On or about July 12, 2017, MITCHELL was added as a signatory on the account.

24. Based on the representations ALMIRALL and MITCHELL made, on or about July 7, 2017, R.F. wire transferred $1.2 million to AURA. R.F.'s funds were wired to the JP Morgan Chase bank account ending 8725 that ALMIRALL had opened in AURA's name on or about the very day R.F. sent the wire.

25. On or about July 12, 2017, MITCHELL was added as a signer on AURA's JP Morgan Chase bank account ending 8725. ALMIRALL and MITCHELL ultimately used a portion of R.F.'s funds to pay for their own apparent personal expenses without R.F.'s knowledge or consent.

26. After R.F. wired his funds to AURA, ALMIRALL and MITCHELL sent materially false and fraudulent communications to R.F. designed to lull and reassure R.F. that he would imminently receive funding, including:

   a. On or about September 21, 2017, MITCHELL sent an email to R.F. that stated: "I sent the funds request of 1.26m to be sent to auraexchange [sic] JP Morgan acct. once [sic] the funds are received we will immediately forward the total 1.26 to the acct [sic] information you have provided on your behalf to the closing attorney."

   b. On or about November 16, 2017, MITCHELL sent a text message to R.F. stating: "Still on track. The chairman of the bank actually called my attorneys yesterday to confirm a few things"

   c. On or about November 23, 2017, ALMIRALL emailed R.F. falsely claiming that AURA was in the process of completing final due diligence of banking requirements for release of funds when, as ALMIRALL well knew, at the time of this communication, he had spent or transferred substantially all of R.F.'s money. MITCHELL was copied on ALMIRALL's email to R.F. in these regards.

   d. On or about December 22, 2017, MITCHELL sent the following text message to R.F. related to the status of the funding: "Merry Christmas [R.F.]. We're good. We will beat the deadline. Believe."

27. AURA never obtained financing for R.F.'s deal, and MITCHELL and ALMIRALL failed to return R.F.'s $1.2 million "equity deposit guarantee."

(All in violation of Title 18, United States Code, Section 1349).

## Counts Two through Four
## (Wire Fraud)

The Grand Jury further charges that:

28. The allegations contained in paragraphs 1 through 27 are incorporated here by reference.

29. On or about the dates below, in the Eastern District of Virginia and elsewhere, defendant MITCHELL, having knowingly devised and intending to devise a scheme and artifice to defraud, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, transmitted and caused to be transmitted by means of wire communication in interstate commerce writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice, as set forth below, each such wire transmission being a separate count:

| Count | Date | Wire Communication |
|---|---|---|
| 2 | July 5, 2017 | Email to R.F. in the Eastern District of Virginia from a location outside the Commonwealth of Virginia to send a purported "confidential verification request" regarding the principals of AURA Exchange. |
| 3 | July 7, 2017 | Electronic communication to initiate the transfer of $1,200,000 from an account controlled by R.F. at First Virginia Community Bank into an account for AURA at JP Morgan Chase Bank, which communication was sent from a computer in the Eastern District of Virginia to computers hosting JP Morgan Chase's servers outside the Commonwealth of Virginia. |
| 4 | November 23, 2017 | Email to R.F. in the Eastern District of Virginia from a location outside the Commonwealth of Virginia to communicate purported impending funding. |

(All in violation of Title 18, United States Code, Sections 1343 and 2)

## Forfeiture Notice

THE GRAND JURY FURTHER FINDS PROBABLE CAUSE FOR FORFEITURE AS DESCRIBED BELOW:

Pursuant to Federal Rule of Criminal Procedure 32.2(a), defendant ANTHONY ERIC MITCHELL is hereby notified that, if convicted of the conspiracy and wire fraud offenses alleged in Counts One through Four above, he shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c), the following property:

(a) A sum of money not less than $1,200,000 in U.S. currency, representing the amount of proceeds obtained as a result of the violation of Title 18, United States Code, Section 1343, as described in Counts One through Four;

(b) Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c), defendant ANTHONY ERIC MITCHELL shall forfeit substitute property, up to the value of the amount described in subparagraph (a), if, by any act or omission of defendant ANTHONY ERIC MITCHELL, the property described in paragraph (a), or any portion thereof, cannot be located upon the exercise of due diligence; has been transferred, sold to, or deposited with a third party; has been placed beyond the jurisdiction of the Court; has been substantially diminished in value; or has been comingled with other property which cannot be divided without difficulty.

(All pursuant to Title 18, United States Code, Section 981(a)(1)(C) and
Title 28, United States Code Section 2461(c).)

A True Bill

Pursuant to the E-Government Act, the original of this page has been filed under seal in the Clerk's Office.

_____    _____
Date                       Foreperson

G. Zachary Terwilliger
United States Attorney

By: _____
Jamar K. Walker
Assistant United States Attorney