IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF VIRGINIA

Alexandria Division

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | ) | Case No. 1:19-CR-101 |
|  | ) |  |
| v. | ) | Honorable Anthony J. Trenga |
|  | ) |  |
| ANTHONY ERIC MITCHELL, | ) |  |
|  | ) |  |
| Defendant. | ) | Trial:  October 9, 2019 |
|  | ) |  |

**GOVERNMENT'S RESPONSE IN OPPOSITION
TO DEFENDANT'S MOTION FOR A MISTRIAL**

The United States of America, through undersigned counsel, hereby responds to the

motion of defendant ANTHONY ERIC MITCHELL for a mistrial based upon purported threats

to defendants' witnesses, including the defendant himself.  The defendant has failed to establish

a sufficient basis for the Court to take the drastic measure of declaring a mistrial in this case.  In

support of its opposition, the government states as follows:

**I.      Factual Background**

The defendant first claims that a subpoenaed witness, F.M., was threatened by T.M., a

victim of the fraud perpetrated by the defendant and Armando Almirall.  As the defendant notes,

the government was unaware of these messages until counsel for the defendant provided them to

the United States on the day it received the communications from F.M.  And it is clear from the

very nature of the messages that T.M. did not know F.M. had been subpoenaed as a witness at

trial.  In fact, no one from the United States' prosecution team has ever informed T.M. of what

other witnesses were subpoenaed to testify at a trial.  On their face, the communications between

T.M. and F.M. suggest that T.M. only contacted F.M. given his online association with AURA

on LinkedIn.  There is no evidence whatsoever to suggest that T.M. attempted to influence

F.M.'s testimony.  Instead, T.M. asked F.M. what, if anything, he knew about the status of

T.M.'s lost funds.

Moreover, it is clear both from F.M.'s text messages and from his previous interviews

with the government that his testimony will, in no way, exculpate the defendant as to the charged

crimes.  Indeed, F.M. acknowledged that he has not spoken to either the defendant or Armando

Almirall in three or four years.  Given that he did not speak to either the defendant or Mr.

Almirall during the entirety of the alleged fraud, it is difficult to surmise how any testimony he

offers in this case will be germane to the material questions on which the jury will need to

determine the defendant's guilt.  Nor is it clear how these communications would have any

impact on his testimony given that F.M.'s truthful testimony would be that he was, in no way,

involved with AURA's deals as it related to C.B. and T.M. (and R.F.)  F.M. has no firsthand

knowledge of the alleged fraud.  There is no danger here that F.M.'s truthful testimony will be

adversely impacted by the messages.  Indeed, to the extent he will testify about his knowledge of

AURA prior to the occurrence of the alleged schemes, such testimony will in no way be

connected to T.M. and C.B.  Simply put, T.M.'s communication with F.M. do not provide a

sufficient basis to grant a mistrial.

With respect to the defendant's own testimony, given that the messages he has provided

the Court occurred months ago, it is difficult to surmise how those messages would have any

impact on his testimony.  From the outset of the trial, it was clear that the defendant intended to

testify.  And given that he did not inform his counsel of these messages until today, the existence

of these messages clearly did not have any impact on his decision to testify or on his state of

mind.  Nor will they have any impact on his decision to testify going forward.

Importantly, T.M. is not the only witness who testified to the scheme to defraud as it relates to the Boston television series.  His testimony is consistent with and corroborated by witness C.B.'s independent recollection of the fraud.  Indeed, witness C.B. had an even more direct role with respect to approval of AURA's wire requests as he was tasked with approving the wire requests, not T.M.

## II.      Analysis

"The denial of a defendant's motion for a mistrial is within the sound discretion of the district court and will be disturbed only under the most extraordinary circumstances."  *United States v. Recio*, 884 F.2d 230, 239 (4th Cir. 2018) (quoting *United States v. Dorlouis*, 107 F.3d 248, 257 (4th Cir. 1997)).  "Before granting a mistrial, the court should always consider whether the giving of a curative instruction or some alternative less drastic than mistrial is appropriate."  *United States v. Martin*, 756 F.2d 323, 328 (4th Cir. 1985).  A grant of a mistrial would only be appropriate when "the circumstances indicate a manifest necessity to discharge the jury to avoid defeating the ends of justice."  *Dorlouis*, 107 F.3d at 257.  In order for the grant of mistrial to be appropriate, the Court must determine that there exists some serious procedural error or misconduct that would result in an unfair trial.  *Williamson v. United States*, 512 U.S. 594, 610 (1994).

Generally, the Court must consider "the closeness of the case, the centrality of the issue affected by the error, and the steps taken to mitigate the effects on the error."  *United States v. Nyman*, 649 F.2d 208, 213 (4th Cir. 1980) (internal citations omitted).  The defendant's motion presents a slightly different issue given that no "error," such as inadmissible testimony, or inappropriate commentary, has occurred.  The witness at issue has previously been questioned

3

and vociferously cross-examined by counsel for the defendant.  What is more, it is clear that both

F.M. and the defendant will still be able to testify without impact from T.M.'s comments.

The United States does not condone T.M.'s actions. In fact, as soon as counsel for the

defendant notified the government of the existence of these text messages, counsel for the United

States instructed law enforcement to inform T.M. not to communicate with any individuals

associated with AURA.[1]  T.M. indicated that he understood and apologized for his actions.  And

while there is no justification for T.M.'s actions, they do not rise to the level of some serious

procedural error or misconduct that would result in an unfair trial to the defendant.

There is no evidence in the record that meets the high standard for declaring a mistrial.

Further, there is presently no danger that T.M.'s actions will in some way prevent the jury from

appropriately discharging its duties in this case.  Absent a showing of an actual impact on the

sanctity of the trial and of prejudice to the defendant, the Court should summarily deny the

defendant's motion.  No such impact has been or can be demonstrated.  Accordingly, the United

States respectfully requests that the Court deny the defendant's motion for a mistrial.

---

[1] While the United States does not condone T.M.'s actions, it is perhaps hyperbole to refer to the messages to F.M. as threats in the context of attempting to intimidate a witness at trial.  That is especially true in light of the fact that it does not appear that T.M. was even aware that F.M. has been subpoenaed to testify.

Respectfully submitted,

G. Zachary Terwilliger
United States Attorney

By:         /s/
Jamar K. Walker
Assistant United States Attorney
Russell L. Carlberg
Special Assistant United States Attorney
Eastern District of Virginia
Counsel for the United States of America
United States Attorney's Office
2100 Jamieson Avenue
Alexandria, VA 22314
Tel.: (703) 299-3700
Fax:  (703) 299-3981

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 14th day of October, 2019, I electronically filed the foregoing

with the Clerk of Court using the CM/ECF system, which will send a notification of such filing

(NEF) to all counsel of record.



_____/s/_____
Jamar K. Walker
Assistant United States Attorney
